MARCIA CATANIA, APPELLANT AND CROSS-APPELLEE, V. THE UNIVERSITY OF NEBRASKA, A CORPORATE GOVERNMENTAL BODY, APPELLEE AND CROSS-APPELLANT.

329 N.W.2d 354

Filed January 28, 1983. No. 81-733.

Martin A. Cannon of Matthews, Cannon & Riedmann, P.C., for appellant.

John R. Douglas of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This is the second appearance of this case on appeal. Our former opinion, found at 204 Neb. 304, 282 N.W.2d 27 (1979), involved a question of venue.

The action was brought by the plaintiff, Marcia Catania, under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1981), against the University of Nebraska, a corporate governmental body, more accurately described as the Board of Regents of the University of Nebraska. From a judgment in favor of the university, and dismissing the plaintiff's petition, the plaintiff has appealed. She assigns as error, generally, that the court held that she had not proven negligence or proximate cause by a preponderance of the evidence. The university has cross-appealed, contending that the District Court should have sustained its demurrer, based on a running of the statute of limitations. However, as will become apparent, it will not be necessary for us to consider the cross-appeal.

"The district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim as defined in this act." § 81-8,214.

The findings of the District Court under the State Tort Claims Act will not be disturbed on appeal unless clearly wrong. *Watson v. City of Omaha,* 209 Neb. 835, 312 N.W.2d 256 (1981). Although that case was decided under the Political Subdivisions Tort Claims Act, the same principles are applicable un-

der the State Tort Claims Act. *Cortes v. State,* 191 Neb. 795, 218 N.W.2d 214 (1974). In other words, unless, from an examination of the record, we can say that the university was guilty of negligence as a matter of law proximately causing injury and damages to the plaintiff, we must affirm the action of the District Court.

The plaintiff was a student in a golf class offered by the University of Nebraska. At the time of her alleged accident and injury she was participating in an indoor exercise wherein the students were hitting plastic golf balls. Although the defendant does not concede the fact, and the trial court made no finding in that regard, it may be assumed for the purpose of this appeal that the plaintiff was injured by being struck in the eye by one of these balls hit by a fellow student.

Because of inclement weather, the students were practicing indoors in a gymnasium which was approximately 96 by 102 feet in size. There were 26 students, using irons, who were arranged in an oval-circle formation approximately 10 feet from the walls and 8 feet apart. The balls used were made of plastic and simulated the look of real golf balls as compared to the perforated "whiffle" balls or cotton balls. The balls were hit toward the opposite wall or center of the oval. During the course of the practice session, the plaintiff looked up and saw a white mass and felt a pain in her eye, suggesting that she had been struck by one of these balls. Presumably as a result of that impact, she has sustained a near total loss of vision in that eye.

Several witnesses who qualified as experts in the field of physical education testified at this trial. John Schultz, who possessed a Ph.D. in education, gave as his opinion that the oval formation employed in this case, whereby the students are hitting the plastic-type ball toward each other, was inappropriate. He did concede that the most obvious danger to students was the risk of being struck by a swinging golf club.

However, under the circumstances existing in this situation, he said that he would advocate a formation whereby the students would stand in two rows, back to back, approximately 10 yards apart, facing the opposite wall, and hit the balls to that wall. He testified that he was not aware of any recognized textbook on physical education which mentioned any danger in the use of plastic golf balls.

Janette Sayre, another expert in the field of physical education, who held a doctor's degree in physical education, stated that the principal danger in a golf class is the risk of being struck by a swinging club. In her 37 years of teaching golf, she has used the oval formation and believed that it gave the instructor the best view of the class. She testified that the oval formation had certain safety advantages over other formations in that it kept the students away from each other and minimized the danger from being struck by a swinging golf club. It was her opinion that the formation being used by the university class instructor at the time of the plaintiff's injury conformed to the standards of golf instruction.

The instructor in charge of the university's class at the time in question, Doris O'Donnell, had been teaching golf at the college level for almost 25 years. She had a doctorate in physical education. She testified that she had used the oval formation for teaching golf for a number of years. In her opinion the primary danger in a golf class was from being struck by a swinging club. She believed that the oval formation being utilized at the time of the plaintiff's injury conformed to acceptable standards of physical education standards. It was her opinion that the double line formation suggested by the witness Schultz created a greater danger to students than the oval one employed in this case.

It would serve no useful purpose to set forth in greater detail the specifics of the various experts' testimony. It should be obvious from the above de-

scription that there was a direct conflict in their opinions as to whether or not the class was conducted with due regard for the safety of the students. Certainly there was believable evidence which would support a finding of no negligence on the part of the university. As such, we certainly cannot say that the judgment of the District Court was clearly wrong.

The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., not participating.